**In re ELI LILLY & COMPANY, PROZAC PRODUCTS LIA-BILITY LITIGATION.**

**MDL No. 907.**

United States District Court, S.D. Indiana, Indianapolis Division.

May 22, 1992.

See also 789 F.Supp. 1448.

Leonard L. Finz, Law Offices of Leonard L. Finz, New York City, lead counsel for all plaintiffs.

G. Terry Hawkins, Morris, Silverthorn & Dutton, Louisville, Ky., liaison counsel for all plaintiffs.

Robert K. Stanley, Baker & Daniels, Indianapolis, Ind., liaison counsel for defendant Eli Lilly & Co.

## ENTRY

DILLIN, District Judge.

This matter comes before the Court on the defendant's motion for entry of a protective order.[1] For the following reasons, the Court grants in part and denies in part the defendant's motion.

### Background

Eli Lilly & Co. (Lilly) is the defendant in a number of products liability suits consolidated in this Court for pretrial purposes by the Judicial Panel on Multidistrict Litigation. In all the cases, the plaintiffs claim that they or their decedents were injured by taking Prozac, a prescription drug manufactured and marketed by Lilly for the treatment of depression.

The plaintiffs seek to discover from Lilly some three or four million documents relating to the drug Prozac. Lilly seeks a protective order to prevent all disclosure of some of the information contained in the documents and to restrict how the plaintiffs may use and with whom they may share certain other information and documents contained within the discoverable material.

The Court held a hearing on February 14, 1992, at which it addressed some of the issues underlying the present motion. The Court, finding that there was no objection to the redaction of patients' names or to the redaction of information concerning the process by which Prozac is manufactured, ruled that such information would be redacted from the documents before production to the plaintiffs. The Court further

1. The plaintiffs have filed a document entitled "Brief in Support of Plaintiffs' Cross Motion for Order of Confidentiality in Accordance with the Manual for Complex Litigation, Second, and in Opposition to Defendants' [*sic*] Motion for Entry of a Protective Order." Since, however, the plaintiffs did not file a cross-motion, but only a brief, there is only one motion, the defendant's, properly before the Court. Even though the Court treats the plaintiffs' brief solely as a response to the defendant's motion, such treatment is of no import, because all the points raised in the plaintiffs' brief have been given full consideration by the Court.

stated that its ruling concerning the manufacturing process was without prejudice to the plaintiffs' right to seek manufacturing data later, upon a proper showing, for purposes of establishing a claim of an aberration in the usual manufacturing process, which the plaintiffs have alleged in a few of the individual cases. The Court further approved in principle the plaintiffs' suggestion that Lilly indicate the nature of each redaction on the documents themselves, such as by means of a stamp. The Court, however, ordered the parties to attempt to resolve between themselves all of these issues, including the labelling of redactions, and to file by March 6, 1992, their motions on any issues remaining unresolved. The parties were unable to agree.

There remain four discovery issues for resolution by the Court. First, Lilly seeks the Court's permission to redact from the documents the names of, and identifying information regarding, those who have reported patients' adverse reactions to Prozac. These "reporters" include principally doctors, hospitals and other health-care providers. Second, the parties continue to dispute whether Lilly may redact information concerning the Prozac manufacturing process.

The third matter of dispute concerns the labelling of redacted material. Lilly claims that, pursuant to protective orders entered in other Prozac cases pending in state courts, it has already redacted from approximately 400,000 documents the names of patients and of reporters and information concerning the manufacturing process. Lilly argues that it would be onerous and cause great delay if Lilly were required to go back through each of the 400,000 documents to label each of the redactions.

Finally, the parties have many disputes about the nature of the protective order that the Court should enter to govern material that Lilly deems confidential and does not want publicly disclosed. Lilly has submitted its proposed protective order to the Court. The plaintiffs raise many objections to Lilly's proposed order and urge the Court to adopt the sample confidentiality order set out in the Manual for Complex Litigation Second (1985), at Section 41.36.

### Discussion

Federal Rule of Civil Procedure 26(c), which Lilly invokes for the purpose of obtaining a protective order, provides:

**Protective Orders.** Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: ... (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way....

If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery....

Fed.R.Civ.P. 26(c). Thus, Rule 26(c) gives the district court broad discretion in fashioning protective orders. *See, e.g., Deitchman v. E.R. Squibb & Sons,* 740 F.2d 556, 566 (7th Cir.1984).

Moreover, while Rule 26(c) merely states "good cause" as the standard for ruling on protective orders, "the federal courts have superimposed a somewhat more demanding balancing of interests approach to the Rule." *Farnsworth v. Proctor & Gamble Co.,* 758 F.2d 1545 (11th Cir.1985) (collecting cases). This standard was described in a Seventh Circuit case as follows:

A motion under Rule 26(c) to limit discovery requires the district judge to compare the hardship to the party against whom discovery is sought, if discovery is allowed, with the hardship to the party seeking discovery if discovery is denied. He must consider the nature of the hardship as well as its magnitude, and thus give more weight to interests that have a distinctively social value than to purely private interests; and he must consider the possibility of reconciling the compet-

ing interests through a carefully crafted protective order.

Marrese v. American Academy of Orthopaedic Surgeons, 726 F.2d 1150, 1159 (7th Cir.1984), rev'd on other grounds, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985).

With these principles in mind, we turn to the arguments of the parties.

## I. REPORTERS' NAMES

■ Drug manufacturers are required to report adverse reactions to the Food and Drug Administration (FDA) under the regulations governing investigational new drug applications (IND's) and applications for approval to market new drugs (NDA's). See, e.g., 21 C.F.R. §§ 312.32, 314.80. Physicians and hospitals, on the other hand, are merely encouraged to make voluntary adverse reaction reports and drug experience reports, either to the FDA or to the drug manufacturers themselves, usually on FDA Form 1639. The FDA regulations are designed to preserve the confidentiality of the reporters' names: they provide that the FDA will delete reporters' names from "[a]dverse reaction reports, product experience reports, consumer complaints, and other similar data" before making IND's and NDA's available for public disclosure under the Freedom of Information Act, 5 U.S.C. § 552. 21 C.F.R. § 314.430(e)(4); see also id. §§ 20.111(c)(3)(iii), 312.130(b), 314.80(h). Moreover, the box on Form 1639 where the reporters' identity is to be filled in states on its face "(in confidence)".

Lilly claims that the reporters' names must be kept confidential in order to protect the reporters' expectations and to preserve the FDA's voluntary reporting system. In support of its position, Lilly has submitted a copy of the FDA's Statement of Interest, dated February 18, 1992, which was prepared for Biffle v. Eli Lilly & Co. et al., No. 91–02496–A (Dist.Ct., Dallas Co., Tex.), one of the Prozac products liability actions filed and remaining in state court. In Biffle, the trial court, faced with Lilly's identical request, ordered that the relevant documents be produced without redaction of reporters' names, even after a hearing at which the FDA presented its opposition

to disclosure of the reporters' names. The Biffle trial court's order has been stayed, however, and is now before the Texas Supreme Court on Lilly's petition for a writ of mandamus.

In contrast with Biffle, four other state courts have entered protective orders similar to the one sought by Lilly in the present cases; these orders permit Lilly to redact the reporters' names. See Fentress et al. v. Shea Communications et al., No. 90CI–06033 (Jefferson Cir.Ct., Ky., March 29, 1991) (Lilly's Appendix 1); Leitsch et al. v. Eli Lilly & Co. et al., No. 90CI–08957 (Jefferson Cir.Ct., Ky., June 10, 1991) (Lilly's Appendix 4); Morris et al. v. Eli Lilly & Co. et al., No. 240,313–401 (Prob.Ct., Harris, County, Tex.) (Lilly's Appendix 2); Langer v. Dista Prods, No. 90C–4598, 1991 WL 349606 (N.D.Ill. Nov. 12, 1991) (Lilly's Appendix 3). The Leitsch order was entered by the same judge as the order in Fentress, which, according to Lilly, governs twenty-two Prozac cases consolidated under the same heading for pretrial purposes.

Lilly also points out that the 400,000 documents that make up the IND for fluoxetine hydrochloride and the NDA for Prozac already have been prepared, in accordance with the protective orders in Fentress, Leitsch, Morris and Langer, with the reporters' names deleted. Lilly argues that it would be unduly burdensome and cause undue delay for Lilly to re-prepare all the documents in accordance with a different protective order. Lilly further suggests that since the protective orders in Morris and Langer were entered by agreement between both parties, and since the lawyer for the plaintiffs in Langer is now a member of the plaintiffs' executive committee for the present multidistrict litigation, the plaintiffs should not now be heard to argue that discovery of reporters' names is critical to the preparation of their cases. Finally, Lilly argues that the plaintiffs would probably gain little from discovery of the reporters' names, since any further information they might have would probably be protected by the physician/patient privilege.

The plaintiffs make several arguments in opposition to Lilly's request for permission to redact reporters' names. First, the plaintiffs argue that Lilly's claim of undue burden is disingenuous, since, in an affidavit submitted in the *Biffle* case in September of 1991, Lilly's custodian of documents indicated that the documents were, or soon would be, prepared in accordance with the protective order in that case. The trial court's order in *Biffle*, as we have noted, required the disclosure of reporters' names.

Second, the plaintiffs argue that the FDA regulations Lilly cites are inapposite. Those regulations only prevent the FDA from disclosing reporters' names, and certain other information, pursuant to a Freedom of Information Act request. The plaintiffs argue that the regulations say nothing about what the FDA may disclose if the FDA itself is involved in litigation, let alone what private entities may disclose if they become embroiled in civil litigation. The plaintiffs thus argue that the regulations provide no basis for the Court's inferring a broad public policy to protect reporters' names.

As their third argument in support of their position, the plaintiffs cite two decisions: *Biffle*, the state-court Prozac case, described above, in which the trial judge ruled that reporters' names were not redactable, and *Durham et al. v. Hoffman LaRoche, Inc. et al.*, No. CV 89–L–0075–S (N.D.Ala.), a case involving the prescription drug Accutane. In an unpublished decision without a statement of facts or of reasons, the trial court in *Durham* ordered the defendants to produce "the names and addresses of physicians and treating facilities deleted by defendants from the adverse experience reports previously produced." *Id.*, slip op. at 2 (May 30, 1990) (Plaintiffs' Appendix M). The defendants in *Durham* filed a petition for a writ of mandamus in the Eleventh Circuit, which was denied without opinion. *In re Hoffman–LaRoche, Inc.*, No. 89–7896 (11th Cir. Oct. 9, 1990) (Plaintiffs' Appendix N). The defendants then filed a petition for a writ of certiorari in the United States Supreme Court, which was also denied without opinion. *Hoff-*

*mann–LaRoche, Inc. v. United States District Court for the Northern District of Alabama,* —— U.S. ——, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990).

To resolve the question of the redaction of reporters' names, the Court must balance Lilly's interests in withholding the reporters' names against the plaintiffs' interests in discovering them.

The plaintiffs have articulated no reasons to explain why they need the reporters' names. On the other hand, Lilly has articulated significant public policy reasons (the maintenance of the voluntary reporting system and the protection of voluntary reporters' expectations of confidentiality) for not releasing the names. The evidence submitted shows that some physicians, scientists and health-care providers would be deterred from reporting their patients' experiences with drugs if they knew that their names could be released, because they would fear becoming embroiled in litigation as third parties subject to discovery or as parties to malpractice suits brought by their patients, and would also fear that by filing a report they would risk breaching their obligation of confidentiality towards their patients.

This evidence is not undermined by the plaintiffs' submission of an article discussing the factors affecting physicians who report adverse drug reactions, since the article by its own admission says nothing about the factors that deter those physicians who choose not to report such reactions. Plaintiffs' Appendix Q. Nor is it undermined by the plaintiffs' citation of the American Medical Association's (AMA's) ethical directive that requires a physician to "continue to study, apply and advance scientific knowledge, make relevant information available to patients, colleagues, and the public," Plaintiffs' Appendix P; this principle notwithstanding, the FDA's experience with physicians is otherwise. Indeed, the AMA's *amicus curiae* brief submitted in the *Hoffman–LaRoche* case evidences that body's opposition to compelled disclosure of reporters' names, which the AMA fears would deter physicians from making voluntary reports and

thereby seriously jeopardize the public health and safety. Lilly's Reply, Attachment 5.

Lilly has also represented, and we have no reason to doubt, that the IND and NDA have to date been redacted only in accordance with the protective orders in *Fentree, Leitsch, Morris* and *Langer,* and not in accordance with the protective order in *Biffle.*[2] Thus, it appears that significant delay would result from an order requiring Lilly to re-prepare the 400,000 documents that make up the IND and NDA so as to preserve the redaction of patients' names but not of reporters' names.

Moreover, opinions of other courts have reached the conclusion that reporters' names ought to be redacted before production of FDA and drug companies' documents, in order not to undermine the FDA's voluntary reporting system. *See, e.g., In re Hoffman–LaRoche, Inc.,* slip op. at 2–5 (Clark, J., dissenting); *Harris v. Upjohn Co.,* 115 F.R.D. 191, 192 (S.D.Ill. 1987); *Wesley v. Rye,* 490 So.2d 272 (La. 1986); *Stahl v. Rhee,* 136 A.D.2d 539, 523 N.Y.S.2d 159, 161 (1988); *Newsom v. Breon Laboratories, Inc.,* 709 S.W.2d 559 (Tenn.1986).

However, in *Wesley,* which cited *Newsom,* the Louisiana Supreme Court ordered that the physicians' names be deleted from the drug experience reports, but that the plaintiffs be allowed "to apply for disclosure in a particular case upon showing of relevance." *Wesley,* 490 So.2d at 272. Finally, Judge Clark, also citing *Newsom,* wrote in his dissent in *In re Hoffman–LaRoche:*

> I would grant the writ of mandamus to permit the [district] court to direct the defendant to furnish the reports with the names of the physicians redacted, as well as the patients, after which the district court would be free to order the defen-

dant to produce the names of the physicians involved in some of the reports if the district court concluded that such information is required to resolve disputed issues of fact between parties and that such information is in no other way available to the plaintiffs.

*In re Hoffman–LaRoche,* slip op. at 5 (Clark, J., dissenting).

This Court concludes, having balanced the interests of the parties, that Lilly has demonstrated good cause for redacting the reporters' names from the documents concerning Prozac. Thus, we respectfully disagree with the trial courts in *Biffle* and in *Durham.*[3] Accordingly, the Court orders that the applicable documents be produced with the reporters' names redacted. This ruling is without prejudice to the right of the plaintiffs to attempt to obtain an exception as to a particular reporter upon establishing relevance, necessity to resolve disputed facts and that the information is not otherwise available.

## II. MANUFACTURING PROCESS

■ As one court has succinctly stated, [a]nalysis of protective orders under Rule 26(c)(7) requires three lines of inquiry. First, is the matter sought to be protected "a trade secret or other confidential research, development, or commercial information" which should be protected? Second, would disclosure of such information cause a cognizable harm sufficient to warrant a protective order? Third, has the party seeking protection shown "good cause" for invoking the court's protection?

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 529 F.Supp. 866, 889 (E.D.Pa. 1981).

---

**2.** Although in the September, 1991, affidavit, submitted in *Biffle,* Lilly stated, "It presently appears that Lilly will be able to comply with that portion of the Court's order as it relates to its non-privileged FDA documents contained in the IND and NDA," Plaintiffs' Appendix K, it appears that Lilly never re-prepared the FDA documents in accordance with the *Biffle* trial

court's order, which Lilly is challenging in a higher court.

**3.** We note that the latter decision is particularly unpersuasive authority, as it was issued without opinion. The Eleventh Circuit's denial of a writ of mandamus and the Supreme Court's denial of a writ of certiorari do not make it any more persuasive.

In this case, Lilly seeks a protective order entitling it to redact information concerning the process of manufacturing Prozac that is contained in the three to four million documents of which the plaintiffs seek production. Such information is clearly the type of confidential information covered by Rule 26(c)(7). Moreover, Lilly would undoubtedly suffer economic harm if the manufacturing process it has expended time and money developing became known by its competitors.

The crux of the inquiry in the present case is thus whether the Lilly has shown "good cause" for the redaction of the manufacturing process information. As we have seen previously, the good cause standard requires the Court to balance the interests of both parties.

At the February 14, 1992 hearing, the Court, finding that good cause existed for nondisclosure of the manufacturing process information, ruled that such information was redactable at present, until such time as the plaintiffs had made a proper showing of need for that information. The plaintiffs claim that such time has arrived; in support, they have submitted a portion of an FDA report discussing certain irregularities at Lilly's Indianapolis plant, which manufactures Prozac. This report was discussed at the February 14 hearing, however, and was deemed insufficient to form a basis for disclosure of the Prozac manufacturing process, particularly as the plaintiffs had not shown that they could not discover evidence of the alleged misfiring in the manufacturing process through other means. Because the plaintiffs have presented no new evidence or arguments that cause us to reconsider our earlier ruling that Lilly is entitled to redact data concerning the process of manufacturing Prozac, we reaffirm that ruling.

Accordingly, we grant Lilly's motion with respect to its request for permission to redact information concerning the Prozac manufacturing process from the documents subject to the plaintiffs' request for production.

## III. LABELLING OF REDACTIONS

■ At the February 14, 1992 hearing, the Court urged the parties to resolve between themselves the plaintiffs' request that Lilly be required to indicate the nature of each redaction. The parties have been unable to do so, and thus the Court must impose a resolution upon them.

Lilly claims that with respect to 90% of the redactions the nature of the redaction is obvious from the document itself, that is, it is apparent from the context whether a patient's identity, a reporter's identity or an aspect of the manufacturing process is the subject of the deletion. Lilly further claims that it would be unduly burdensome for Lilly to go through again each of the 400,000 documents it has already prepared for the purpose of labelling every redaction. Lilly proposes instead that the plaintiffs take the documents in their present state and seek clarification from Lilly whenever they cannot in good faith understand the nature of the redaction from the context. This seems to us to be reasonable.

The Court therefore determines that in the future Lilly must indicate, on the document itself, with respect to each redaction, the nature of the redaction, except when the nature of the redaction is already clearly labelled (as in the case of a preprinted form with a box of which the label, *e.g.* "patient's name," has not been obscured but of which the contents have been obscured). This ruling does not apply to documents previously redacted.

## IV. PROCEDURAL SAFEGUARDS

Lilly has submitted a proposed protective order with a multitude of procedures designed to ensure that sensitive commercial information, discoverable in the present litigation, not get into the wrong hands. The plaintiffs contend that Lilly's proposed order goes too far, and suggest that the Court adopt the model confidentiality order set forth in the Manual for Complex Litigation Second, at Section 41.36.

The Court, having duly considered all the arguments and proposals of the parties, concludes that some aspects of each side's

positions are meritorious. Accordingly, the Court enters simultaneously with this entry a protective order of its own fashioning that attempts to resolve the parties' differing interests fairly, and grants in part and denies in part Lilly's motion with respect to Lilly's request for entry of its proposed protective order.

### Conclusion

For the foregoing reasons, the defendant's motion for a protective order is GRANTED IN PART AND DENIED IN PART. Specifically, the Court orders: 1) that Lilly may redact the names of reporters from the documents subject to production, but that after production, upon a proper showing, the plaintiffs may apply to the Court for disclosure of the identity of particular reporters; 2) that Lilly may redact from the discoverable documents information concerning the process of manufacturing Prozac; 3) that Lilly must indicate, on each document, the nature of each redaction, except when the nature of the redaction is already clearly labelled on the document, and except that this ruling will not apply to the 400,000 documents previously redacted; and 4) that discovery in this litigation shall hereinafter be governed by the confidentiality order set forth in the separate order of the Court of this same date.