**Renee CONTRATTO, Plaintiff,**

v.

**ETHICON, INC., et al., Defendants.**

**No. C03–3804 MJJ (BZ).**

United States District Court,
N.D. California.

Nov. 18, 2004.

---

**594**

Stuart C. Talley, Sacramento, CA, for Plaintiff.

Kai Peters, Gordon & Rees LLP, Jonathan M. Rolbin, Michael J. Stortz, Drinker, Biddle & Reath LLP, San Francisco, CA, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR PROTECTIVE ORDER

ZIMMERMAN, United States Magistrate Judge:

Before the Court is a Motion for a Protective Order filed by Ethicon, Inc., Johnson & Johnson, Lifecore Biomedical, Inc., and Vital Pharma, Inc. ("defendants"). Having reviewed the papers filed by the parties and held lengthy hearings, I **DENY** defendants' motion.

Plaintiff Rene Contratto underwent hernia surgery in August of 2002. Plaintiff's Second Amended Complaint ("Compl.") ¶ 17. During the surgery, plaintiff's doctors applied Gynecare Intergel Adhesion Prevention Solution ("Intergel") within her abdomen. *Id.* Intergel is a substance used by medical care providers to reduce the adhesions sustained by a patient during surgery. *Id.* at ¶ 1. Intergel is collectively manufactured, marketed, distributed, and sold by defendants. Compl. ¶ 1. Following plaintiff's surgery, the Intergel solidified within her body and seriously injured her. *Id.* at ¶ 9. Plaintiff sued defendants for negligence, products liability, and misrepresentation. *Id.* at ¶ 9.

In response to document requests propounded by plaintiff, defendants moved for an order precluding plaintiff from further discovery and all other litigation use of (1) voluntary and mandatory adverse event reports (sometimes called complaints) from device user facilities, physicians, patients or foreign users; and (2) medical device reports, complaint files, and any other documents from which information contained in any adverse event reports may be gleaned.[1] During the hearings, the issues were narrowed considerably. Plaintiff conceded that the medical device reports she sought are available on the Food and Drug Administration's ("FDA") website, and withdrew her requests for them. Defendants conceded that they have no grounds to protect complaints by patients or foreign users, and withdrew such documents from the scope of their protective order.

For regulatory purposes, the parties agree that Intergel is classified as a medical device. Any complaints defendants received about Intergel fall into two broad categories: mandatory reports and voluntary reports. Federal law requires a medical device manufacturer, such as some of the defendants, to report adverse event information to the FDA in cases involving death or serious injury. *See* 21 U.S.C. § 360i(a). Any mandatory report required by section 360i(a) is called a medical device report ("MDR"). *See* H.R. REP. No. 101–808, at 22 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6305, 6315–6316 (1990). The same law requires "device user facili-

---

1. Defendants have not raised the physician-patient privilege as an issue with regard to any of the requested documents.

ties"[2] to report adverse events either to the FDA or to the manufacturer in specific circumstances ("user facility reports"). 21 U.S.C. § 360i(b)(1). Voluntary reports of adverse events are generated by patients, consumers and physicians and by device user facilities and manufacturers in situations in which mandatory reports are not required.

Defendants contend that production of the documents plaintiff requests is barred by 21 U.S.C. § 360i(b)(3), and would threaten the FDA's medical device safety reporting system.[3] Specifically, with respect to Intergel, defendants argue that section 360i(b)(3) prohibits plaintiff from discovering voluntary reports of adverse events and complaint files and related documents which contain information derived from, or which are based on, mandatory or voluntary reports. Section 360i(b)(3) states:

> [N]o report made under [section 360i(b)(1)] by (A) a device user facility, (B) an individual who is employed by or otherwise formally affiliated with such a facility, or (C) a physician who is not required to make such a report, shall be admissible into evidence or otherwise used in any civil action involving private parties unless the facility, individual, or physician who made the report had knowledge of the falsity of the information contained in the report.

21 U.S.C. § 360i(b)(3).

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1). As the United States Supreme Court recognized in *Hickman v. Taylor*, with the enactment of the Federal Rules, "[t]he way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial." 329 U.S. 495, 500, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

Absent section 360i(b)(3), defendants conceded during argument, complaints about Intergel would be routinely discoverable, just as complaint information is routinely discoverable in products liability suits involving other devices and products. *See, e.g., Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir.2004)(seatbelt); *Smith v. BIC Corp.*, 869 F.2d 194, 201 (3d Cir.1989) (disposable butane lighter); *Fletcher v. Atex, Inc.*, 156 F.R.D. 45, 55 (S.D.N.Y.1994) (computer keyboard); *In re Eli Lilly & Co., Prozac Prod. Liab. Litig.*, 142 F.R.D. 454, 461 (S.D.Ind.1992) (prescription drug); *Ericson v. Ford Motor Co.*, 107 F.R.D. 92, 95 (E.D.Ark.1985) (automobile). The Supreme Court has consistently held that the discovery rules should be accorded a "broad and liberal scope." *Schlagenhauf v. Holder*, 379 U.S. 104, 114–15, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964)(citing *Hickman v. Taylor*, 329 U.S. at 507, 67 S.Ct. 385). Unless information is specifically privileged or otherwise protected by statute, it is discoverable under Rule 26(b)(1).

### User Facility and Voluntary Physician Reports

Section 360i(b)(3) states that reports covered by it shall not "be admissible or otherwise used in any civil action involving private parties." 21 U.S.C. § 360i(b)(3). Defendants interpret this language as prohibiting discovery of user facility reports generated pursuant to section 360i(b) and voluntary physician reports in this proceeding.

The reports defendants seek to protect are covered by section 360i(b)(3), but whether the statute prohibits plaintiff's discovery of these reports is less clear. While the statute

---

**2.** "Device user facility" is defined as a "hospital, ambulatory surgical facility, nursing home, or outpatient treatment facility which is not a physician's office." 21 U.S.C. § 360i(b)(6).

**3.** As a preliminary matter, plaintiff claims that defendants have waived the statute's protection by failing to file a timely response to plaintiff's document requests as required by Rule 34(b) and by failing to object that production was barred by section 360i(b)(3) when they filed a response a month late. Neither side has cited any authority on the issue of whether a party can "waive" the protection of a statute which limits discovery by not timely objecting, especially when the statute seeks to protect third parties. When confronted with a privilege or an overbroad document request, a party always has the option of electing not to assert the privilege or responding to the overbroad request without violating any law. By contrast, if section 360i(b)(3) means what defendants now assert, then any order compelling production would be tantamount to an order in violation of a statute. Accordingly, I decline to find defendants have waived their section 360i(b)(3) arguments.

is amenable to defendants' interpretation, a better interpretation is that admissibility or discovery of these reports is prohibited only in civil actions involving the maker of the report ("reporter"). Under this interpretation, section 360i(b)(3) does not apply to a suit by a patient against the manufacturer of the product that is the subject of the report.

Defendants' interpretation has little to commend it. It is at odds with the regulation adopted by the FDA to implement the statute. *See* 21 C.F.R. § 20.63(f). In proposing section 20.63(f), the FDA explained that the success of the "adverse event reporting system depends substantially on the guarantee of confidentiality given the identity of the reporter under FDA regulations." Protecting the Identities of Reporters of Adverse Events and Patients; Preemption and Disclosure Rules, 59 Fed.Reg. 3944, 3946 (proposed January 27, 1994). The FDA noted that Congress had provided some protection to physicians by enacting 21 U.S.C. 360i(b)(3). "This provision, however, may not be sufficient to prevent manufacturers from being compelled to release the reporters' or patients' *identities* pursuant to a *discovery order.*" *Id.* (emphasis added). In fact, the FDA was aware of a number of lawsuits in which manufacturers were "requested or ordered" to provide the names of reporters of adverse events. *Id.* at 3947. The FDA had become involved in a number of these cases to inform the courts "of the potential damage the agency believes would be done to its post marketing surveillance program and the public health if the *identities* of patients and reporters were released to plaintiffs in these cases." *Id.* at 3947. Had the FDA interpreted section 360i(b)(3) to prohibit the disclosure of the reports or their contents in discovery in lawsuits between patients and manufacturers, it would have had no need to adopt section 20.63(f) to protect the identity of the reporters. Such a regulation only became necessary if Section 360i(b)(3) was interpreted by the FDA as not prohibiting discovery of the reports in suits against manufacturers.

Defendants' interpretation would also curtail plaintiff's discovery and concomitant ability to prove her case. As defendants acknowledged during argument, under their interpretation, a plaintiff in a medical device case would be prohibited from obtaining all discovery of prior complaints about the device that are not made publicly available by the manufacturer or the FDA.[4] Defendants nowhere persuasively explain why the Congress intended such an extreme result. Nor do they point to anything in the legislative history of section 360i(b)(3) which compels such a result. To the contrary, the legislative history evinces a concern that public access to information about medical devices not be affected and that litigation over adverse events continue without restriction.[5] *See* H.R. REP. No. 101–808, at 22–23, U.S.Code Cong. & Admin.News 1990, 6305, 6315–6317.

Defendants' interpretation would also run afoul of the Supreme Court's admonition "to avoid a construction that would suppress otherwise competent evidence unless the statute, strictly construed, requires such a result." *St. Regis Paper Co. v. United States*, 368 U.S. 208, 218, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961). Strictly construed, section 360i(b)(3) does not prohibit discovery of user facility reports and voluntary physician reports in a civil action between a consumer and a manufacturer.[6] Had the Congress intended such

---

**4.** While there might be voluntary complaints made by patients or others unaware of the statute, a manufacturer would have no way of distinguishing such reports from voluntary reports described in section 360i(b)(3).

**5.** The House Report states "[i]t is appropriate for the public to have access to adverse health and safety information reported to the FDA pursuant to [section 360i]." H.R. REP. No. 101–808, at 22, U.S.Code Cong. & Admin.News 1990, 6305, 6315. The House Report also states that "there is no prohibition on civil litigation about the events that are the subject of the [adverse event] report." *Id.*

**6.** As one of the few courts to deal with section 360i(b)(3) recognized, whatever the language "not otherwise used" means, it is not clear that it is meant to bar discovery. *Adcox v. Medtronic,* 131 F.Supp.2d 1070, 1075 (E.D.Ark.1999). In *Adcox,* the district court recognized that the "[not] otherwise used in any civil action" language in section 360i(b)(3) is similar to language found in at least five other statutes in the United States Code. *Id.* Yet that court could not find a single case where a court had prevented discovery based on such language. *Id.*

a result, it could easily have produced it by using explicit language. *See, e.g.,* 23 U.S.C. § 409 (traffic safety reports) ("notwithstanding any other provision of law, reports, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings . . . shall not be subject to discovery or admitted into evidence"), *see also* 10 U.S.C. § 1102(b) (medical quality assurance records created by or for the Department of Defense) ("[n]o part of any medical quality assurance record . . . may be subject to discovery or admitted into evidence in any judicial or administrative proceeding").

Defendants' interpretation would also produce an absurd result. The final clause of section 360i(b)(3) states that a document covered by subsection (3) "shall [not] be otherwise used in any civil action" unless the reporter knows the document is false. Applied to suits against manufacturers, this prohibitory language would allow a plaintiff to discover only **false** complaints or reports. Defendants did not dispute this result during argument. Restricting the statute's prohibitory language to civil actions between patients and their doctors and hospitals would allow a doctor or hospital to freely report an adverse event involving a patient without worrying about the report being used against them in litigation, unless the report was false.

Courts favor a statutory interpretation that "is consistent with the language of the statute and avoids absurd results" when "nothing in the language or history" of the statute "suggest[s] Congress intended . . . absurd results." *See United States v. Alfeche,* 942 F.2d 697, 698–99 (9th Cir.1991). Congress intended section 360i to encourage the reporting of adverse events by medical

device users and not to restrict civil litigation concerning reported events. *See* H.R. REP. No. 101–808, at 22–23, U.S.Code Cong. & Admin.News 1990, 6305, 6315–6317. In light of the Congressional intent, section 360i(b)(3)'s exception for false reports only produces a sensible result if the statute is applied to lawsuits filed against reporters.

Defendants' interpretation is not necessary to advance the FDA's medical device safety reporting system.[7] Plaintiff does not dispute that in passing the statute, Congress intended to encourage the filing of reports. Making them mandatory and masking the identity of the reporter before producing them should be adequate to accomplish this purpose.

Nor is it clear that producing user reports without identifying information in a lawsuit by a patient against a manufacturer would deter doctors and hospitals from making such reports. Other statutes and regulations require manufacturers to maintain records of adverse experiences and to report certain categories of adverse events to the FDA. *See, e.g.,* 21 U.S.C. § 355(k) (requiring drug manufacturers to maintain records and make reports of clinical data); 21 C.F.R. § 310.305 (requiring drug manufacturers to maintain records and make reports of clinical data and other information in certain circumstances); 21 C.F.R. § 314.80 (requiring post-marketing reporting of adverse drug experiences); 21 C.F.R. § 600.80 (requiring reporting of adverse events related to biological products).

These statutory schemes also depend upon voluntary reporting by physicians and other health care professionals. *See* Protecting the Identities of Reporters of Adverse Events and Patients, 59 Fed.Reg. at 3945. Yet courts have allowed discovery of such reports. *See, e.g., In Re Eli Lilly & Co.,* 142 F.R.D. at 461 (allowing discovery of adverse

---

7. Defendants' position is especially hard to understand given the use they have made of the information they now seek to protect. For example, in support of this motion, defendants asserted that plaintiff was not being denied effective discovery since they had produced to plaintiff a number of documents they had generated in connection with various Intergel related FDA applications in which they had summarized all non-reportable adverse events. It is hard to understand why the defendants should be free to use

adverse event information for their purposes while at the same time restricting the ability of the plaintiff to discover this information or the defendants' response to it. If, as defendants assert, a physician or hospital will be deterred from submitting a report if there is a chance that the contents of the report will become public, then the knowledge that the defendants will publicize the contents of the report as they see fit should deter the reporter.

reaction reports in redacted form); *Harris v. Upjohn Co.*, 115 F.R.D. 191, 192–93 (S.D.Ill. 1987) (allowing discovery of adverse reaction reports and drug experience reports in redacted form); *Waelde v. Merck, Sharp & Dohme*, 94 F.R.D. 27, 28–30 (E.D.Mich.1981) (denying protective order of New Drug Application file, information related to post-marketing adverse events, pre-marketing studies, and animal tests); *Eli Lilly & Co. v. Marshall*, 850 S.W.2d 155, 160 (Tex.1993) (holding that a products liability plaintiff was entitled to discovery of redacted adverse reaction reports). Defendants have presented no case law that would suggest that discovery of MDRs or adverse event reports for medical devices should be treated differently than in other statutory reporting schemes.[8]

### Complaint Files and Related Documents

█ Defendants also argue that section 360i(b)(3) protects "complaint files" and any documents produced by manufacturers in response to mandatory or voluntary complaints or contained in the files they created after receiving a mandatory or voluntary complaint. Plaintiff especially seeks discovery of a defined sub-category of documents that resulted from investigations conducted by defendants following their receipt of Intergel complaints. For example, in plaintiff's case, defendants caused a Dr. diZerega to review her complaint and conduct an investigation which included Dr. diZerega interviewing plaintiff's treating physician.[9]

Section 360i(b)(3) by its own terms does not apply to a manufacturer's complaint files. *See* 21 U.S.C. § 360i(b)(3). Rather, section 360i(b)(3) applies only to reports made by device user facilities or individuals employed or affiliated with a device user facility, and to voluntary physician reports. 21 U.S.C. § 360i(b)(3).

Defendants admit that their complaint files are not covered by the express language of section 360i(b)(3), but argue that if the initial complaint is within the ambit of that statute then all documents generated by the complaint should likewise be protected.[10] This argument fails for several reasons. First, there is no support for it in section 360i(b)(3), which includes only reports made by device user facilities, their staff, and physicians. *See* 21 U.S.C. § 360i(b)(3). It addresses neither independent investigations made by doctors hired by the manufacturer nor related documents created by the manufacturer.

Second, the legislative history of section 360i(b)(3) does not support defendants' position. House Report 101–808, U.S.Code Cong. & Admin.News 1990, 6305 indicates that the Congress created certain protections to encourage reporting by device user facilities and physicians. *See* H.R. REP. No. 101–808, at 21, U.S.Code Cong. & Admin.News 1990, 6305, 6314 ("The Committee's intent is to encourage such medical device users, who may encounter otherwise reportable problems in their private office practice, to notify the FDA or the manufacturer of such problems."). It does not suggest that these protections should extend to files generated by manufacturers or third parties hired by manufacturers to conduct investigations into its product. *See id.*

---

**8.** Defendants' reliance on dicta from the Eighth Circuit's *Medtronic* decision is misplaced. *In re Medtronic*, 184 F.3d 807, 808 (8th Cir.1999). *Medtronic* reversed an order which granted plaintiff's request to discover "the names of patients, physicians and facilities involved with other allegedly defective Medtronic pacemakers." *Id.* The Court determined that 21 C.F.R. § 20.63(f) prohibited the requested discovery and upheld the validity of the regulation against a challenge that it conflicted with the Arkansas physician-patient privilege. *See id.* at 810–11. In its penultimate paragraph, the court noted that the requested discovery, the identities of reporters, would also be prohibited by section 360i(b)(3). *Id.* at 811. Here plaintiff is not seeking the identities of the reports, or in any way challenging 21 C.F.R. § 20.63(f). To the extent defendants read *Medtronic* as prohibiting

any discovery of the information in the reports, *Medtronic* is neither binding nor persuasive, since the Eighth Circuit provided no analytical support for its dicta and addressed none of the reasons for providing the discovery set forth above.

**9.** Another problematic result of defendants' interpretation of Section 360i(b)(3) was their objection that the section prevented them from producing their files on plaintiff. *See e.g.* Ethicon's Supplemental Response to Document Request No. 21.

**10.** Since MDRs are not covered by section 360i(b)(3), there is no basis in the statute for protecting complaint files and other documents related to MDRs.

Third, defendants' expansive construction of section 360i(b)(3) is again inconsistent with the governing rules of statutory construction. The Supreme Court has held that statutes barring disclosure of information should be narrowly construed, absent an express prohibition against disclosure. *St. Regis Paper Co.*, 368 U.S. at 218, 82 S.Ct. 289. See discussion *supra* at ¶ 7–8. Section 360i(b)(3), narrowly construed, does not bar discovery of a manufacturer's complaint files.

For the foregoing reasons, it is **HEREBY ORDERED** that defendants' Motion for a Protective Order is **DENIED. IT IS FURTHER ORDERED** that defendants shall produce the requested documents within 45 days and that defendants shall redact all names and other identifying information from all documents they produce.