597 So.2d 873 (1992)
SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, Appellant,
v.
Thomas M. BEARD, Chairman and Thomas M. Beard, Betty Easley, Gerald L. Gunter, Michael L. Mck. Wilson, and J. Terry Deason, Commissioners, as and Constituting the Florida Public Service Commission, an Agency of the State of Florida, Appellees.
No. 91-1632.
District Court of Appeal of Florida, First District.
April 10, 1992.
*874 Harris R. Anthony and E. Barlow Keener, John P. Fons and J. Jeffry Wahlen, of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for appellant.
Susan F. Clark, General Counsel, and Richard C. Bellak, Associate General Counsel, and Jack Shreve, Public Counsel, Tallahassee, for appellees.
ERVIN, Judge.
Appellant, Southern Bell Telephone and Telegraph Company (Bell), seeks review of an order issued by the Public Service Commission (PSC or Commission), denying appellant's request to classify certain documents as confidential, pursuant to Section 364.183, Florida Statutes (Supp. 1990). We affirm.
Appellant is a telecommunications company and, as such, is subject to plenary regulation by the PSC. The underlying case was initiated after the Office of Public Counsel (OPC) petitioned the PSC to investigate and review Bell's Cost Allocation Manual (CAM). During that proceeding, Bell contended that certain documents it produced during discovery constituted "proprietary confidential business information" under section 364.183[1] and, therefore, *875 should be protected from public disclosure and considered exempt from the Public Records Act (Section 119.07(1), Florida Statutes (Supp. 1990)).
Appellant's request for confidential classification pertained to two sets of documents. The first, Document A, is a 29-page document entitled "Report of the Operations Review Team on the Part 64 Costs Allocation Process." This report summarizes the conclusions and recommendations of a group of Bell employees assembled to review and analyze certain reports and form an opinion as to the reasonableness of the cost and degree of compliance with the CAM. The second document, Document D, is in fact two sets of unrelated documents, only one of which is relevant to this proceeding. The pertinent material is a compilation of extracts from a group of documents known as the "Benchmark Reports" and Bell's response to those reports. The Benchmark Reports were created by an outside consultant Bell retained to analyze and provide advice regarding the proposed combination of Bell's regulated operations and nonregulated customer premises equipment operations.
The above documents were produced for all parties, subject to a motion for protective order wherein Bell sought confidential treatment of the documents under section 364.183. In regard to Document A, Bell considered the document "to be an internal audit... entitled to be treated as proprietary confidential business information pursuant to Section 364.183(3)(b), Florida Statutes." In response thereto, the OPC argued that Document A is not a report of internal auditors, but rather is a report from an operations review team. Bell admitted the document was not prepared by its internal auditor, but contended it "is nonetheless a report of internal auditors."
As to Document D, Bell contended that the Benchmark Reports contain "critical self-analysis" and therefore fall within the general classification of internal audits. Appellant reasoned that since the reports were created to obtain an understanding of the internal workings of the company, much like internal audits, it should not matter whether they were created by an internal auditor or an outside consultant. Even if the document did not fit within any specific category set out in section 364.183(3), Bell argued that it should be afforded confidential treatment because the disclosure of critical self-analysis would stifle the gathering of similar information in the future, and thereby have a chilling effect on the preparation of any such analyses in the future, in that those who supply the analyst with this information would be less likely to provide frank, critical, honest, confidential information, and the analysts would be discouraged from investigating thoroughly and frankly. Because of such potential harm, Bell argued that the Commission had discretion under section 364.183 to consider such materials confidential, because they are similar to internal audits. Finally, Bell pointed to the privileged treatment afforded to critical self-analysis in the federal sector.[2] The OPC responded that Document D was not an internal audit, because it was prepared by an external consultant, and that there is no statutory exception for critical self-analysis.
In regard to Document A, Bell, as previously stated, contended that it qualified for confidential classification under section 364.183(3)(b), dealing with "[i]nternal *876 auditing controls and reports of internal auditors." The record shows, however, that although Document A was prepared by employees of Bell, it was not constructed by internal auditors but rather by a review committee. Because the document admittedly is not a report of an internal auditor, we agree the PSC did not err by concluding that confidentiality was not mandated under section 364.183(3)(b).[3]
Turning finally to Document D, we agree also that the Commission properly rejected Bell's argument that the information should be accorded confidential status because it is similar to an internal audit and that its disclosure would be harmful. In that the information was not an internal auditor's report, the Commission properly exercised its discretionary delegated legislative authority in denying such material confidential treatment under section 364.183(3)(b).
As for Bell's critical self-analysis argument, the Commission reasoned, in disallowing the material confidential protection, that the legislature did not intend to create such a category in that no such exemption was explicitly set forth in the statute. In our opinion, the Commission's conclusion is consistent with the purpose of the Public Records Act, which legislatively recognizes that all state, county, and municipal records shall  except those that are narrowly excepted from disclosure  at all times be open for personal inspection by the public. Downs v. Austin, 559 So.2d 246, 247 (Fla. 1st DCA), review denied, 574 So.2d 140 (Fla. 1990). The Commission's interpretation is also consistent with the liberal construction afforded the Public Records Act in favor of open government. Id. Thus, once the exceptions set forth in section 364.183(3) are considered in conjunction with the Public Records Act, the Commission's conclusions that section 364.183(3) should be narrowly construed and that no exception should be created for critical self-analyses are reasonable.[4]See PW Ventures, Inc. v. Nichols, 533 So.2d 281, 283 (Fla. 1988) ("[C]ontemporaneous construction of a statute by the agency charged with its enforcement and interpretation is entitled to great weight. The courts will not depart from such a construction unless it is clearly unauthorized or erroneous." (Citation omitted.)).
In so concluding, we agree with the Commission's implicit determination that Bell failed to establish the harm necessary to allow proprietary confidential business treatment of Document D under section 364.183(3).[5] Both documents were, in fact, *877 produced for all the parties, including intervenors who are appellant's competitors. Thus, as recognized by the Commission during the hearing below, the only harm advanced by Bell is that the information's disclosure might result in embarrassment to Bell's managers if the report were released to the public. Under such circumstances, we cannot say that the Commission abused its discretion by declining to afford proprietary confidential business status to the documents. PW Ventures.
AFFIRMED.
WOLF and KAHN, JJ., concur.
NOTES
[1] Section 364.183, Florida Statutes (Supp. 1990), provides, in pertinent part, as follows:

(1) The commission shall have reasonable access to all company records, and to the records of the telecommunications company's affiliated companies . .. regarding transactions or cost allocations ... and such records necessary to ensure that a telecommunications company's ratepayers do not subsidize the company's unregulated activities. Upon request of the company or other person, any records received by the commission which are shown by the company or other person and found by the commission to be proprietary confidential business information shall be kept confidential and shall be exempt from s. 119.07(1).
* * * * * *
(3) The term "proprietary confidential business information" means information, regardless of form or characteristics, which is owned or controlled by the person or company, is intended to be and is treated by the person or company as private in that the disclosure of the information would cause harm to the ratepayers or the person's or company's business operations, and has not been disclosed unless disclosed pursuant to a statutory provision, an order of a court or administrative body, or private agreement that provides that the information will not be released to the public. The term includes, but is not limited to:
(a) Trade secrets.
(b) Internal auditing controls and reports of internal auditors.
(c) Security measures, systems, or procedures.
(d) Information concerning bids or other contractual data, the disclosure of which would impair the efforts of the company or its affiliates to contract for goods or services on favorable terms.
(e) Information relating to competitive interests, the disclosure of which would impair the competitive business of the provider of information.
(f) Employee personnel information unrelated to compensation, duties, qualifications, or responsibilities.
(Emphasis added.)
[2] See, e.g., Plough Inc. v. National Academy of Sciences, 530 A.2d 1152 (D.C. Cir.1987); Bredice v. Doctors Hosp., Inc., 50 F.R.D. 249 (D.D.C. 1970), aff'd, 479 F.2d 920 (D.C. Cir.1973).
[3] We note that Bell did subsequently adopt an argument that Document A should be treated as confidential, because it contains critical self-analysis, as was argued for Document D. We consider that this argument, which was made in a motion for reconsideration filed after the initial ruling by the prehearing officer that the document was not entitled to confidential treatment, came too late. Bell, having relied solely on the internal audit exception in section 364.183(3)(b) until it suffered an adverse ruling, should be considered foreclosed from arguing another basis after that ruling.
[4] We consider the federal case law relied on by appellant in support of its argument that confidential treatment should be afforded to critical self-analyses inapplicable. The state of Florida is dedicated to its policy of "Government in the Sunshine" and personal access to all public records. § 119.01(1), Fla. Stat. (1991).

Moreover, we note that in the federal sector, critical self-analysis rises to the level of a privilege; it is not merely confidential. In Florida, privileges exist only by statute. § 90.501, Fla. Stat. (1991); Proctor & Gamble Co. v. Swilley, 462 So.2d 1188, 1195 (Fla. 1st DCA 1985) (concluding that no academic privilege exists in Florida and that the court was not at liberty to create such a privilege); State v. Castellano, 460 So.2d 480, 481 (Fla. 2d DCA 1984) (privileges in Florida are no longer created by judicial decision). See also Roy E. Fitzgerald, "Should Florida Adopt a Qualified Privilege for Self-Critical Analyses?" The Fla. Bar J., Nov. 1991, at 32-35, wherein the author recognized that the selfcritical analysis privilege, while accepted in the federal sector, has not been explicitly endorsed in Florida.
[5] We reject Bell's argument that the prehearing officer and the Commission deviated from the plain meaning of the statute by failing to recognize the discretion allowed to them in determining whether documents other than those listed in the six enumerated categories are confidential. In Order No. 23634, the prehearing officer specifically stated that confidentiality may be proved "by demonstrating that the documents fall into one of the statutory exemptions set out in Section 364.183," or "by demonstrating that the information is proprietary confidential information, the disclosure of which will cause the Company or its ratepayers harm." The Commission stated in Order No. 24437 that it was "not foreclosing the possibility that a claim of confidentiality could exist for documents that are `like internal audits.'" Clearly, both the prehearing officer and the Commission recognized that they had discretion to find documents others that those explicitly listed in the six categories confidential.