In re American Home Products Corporation, et al.
















IN THE
TENTH COURT OF APPEALS
 

No. 10-98-282-CV

IN RE AMERICAN HOME PRODUCTS 
CORPORATION, ET AL.,

* * * * * * * * * *

Original Proceeding

* * * * * * * * * * 
                                                                                                               
O P I N I O N
                                                                                                                

      Real parties in interest Debbie Ledford and Sandra L. Moore (collectively “Plaintiffs”) each
filed suit against Relators American Home Products Corporation (“AHP”) and Wyeth-Ayerst
Laboratories Division of AHP (“Wyeth”) for injuries allegedly sustained as a result of Plaintiffs’
use of a prescribed appetite suppressant combination commonly referred to as “phen-fen.”


 
Although the record is unclear as to the involvement of each of the Relators in the process,
Relators collectively manufactured, distributed, and marketed these products before voluntarily
withdrawing them from the market in September 1997.
      Relators seek a writ of mandamus against Respondent, the Honorable Wayne Bridewell, Judge
of the 249th Judicial District Court of Johnson County. They seek relief from Respondent’s order
that they produce to Plaintiffs certain documents relating to on-going scientific studies.
FACTUAL BACKGROUND
      Ledford served AHP with a First Request for Production requesting among other things that
AHP produce any documents in its possession:
which reflect studies conducted after September 15, 1997 with regarding [sic] to
FENFLURAMINE (Pondimin) and/or PHENTERMINE and/or DEXFENFLURAMINE
(Redux); including protocol for those studies, any data gathered for those studies; and
any correspondence to or from investigators relating to such studies.

Ledford’s First Request for Production set forth numerous other requests for similar documents. 
Moore served AHP with a First Request for Production making similar requests.
      AHP responded to these requests for production by providing Plaintiffs with the protocols for
seven studies which began in late 1997 and early 1998 but made written objections to the
production of any further documents on several grounds including:
this request seeks information pertinent to ongoing scientific studies and information
pertinent to scientific studies that are not completed such as protocol, data and
preliminary analysis.

Plaintiffs filed motions to compel AHP to produce any further documents in its possession related
to the studies. AHP and Wyeth responded with a motion for a protective order in each cause. In
support of these motions, AHP and Wyeth attached the affidavit of Dr. Joseph J. Pittelli, “the
Executive Vice President for Clinical Research & Development at Wyeth Laboratories.”
      In this affidavit, Dr. Pittelli describes Wyeth as “the clinical research group of the
defendants.”


 He explains that he and his colleagues at Wyeth formulated a series of studies to
determine whether the use of phen-fen affects the cardiovascular system. Wyeth retained a
number of contract research organizations (CRO’s) to assist in conducting these studies.
      According to Pittelli, these CRO’s:
      ∙    train the investigators in the conduct of the study;
 
      ∙    monitor patient enrollment;
 
      ∙    monitor the investigators’ record keeping;
 
      ∙    collect data;
 
      ∙    “break the blind” at the conclusion of the study to identify the test subjects who took the
medication being studied and those in the control group who took a placebo;
 
      ∙    tabulate the results; and
 
      ∙    make the appropriate statistical analysis.

Until the “blind is broken,” neither the investigators, the CRO’s, nor the company which has
retained the CRO’s has “any way to know any preliminary results. All of these safeguards are
maintained to ensure that the investigators in the field and the CRO itself are free of any improper
influence from the company or any other person interested in the results of the study.”
      Pittelli asserts that premature disclosure of the information requested by Plaintiffs, “while the
studies are still ongoing, could jeopardize their scientific integrity and perhaps result in their
termination.” (emphasis added). Pittelli more specifically states:
The disclosure of the identity of the CRO’s and clinical investigators involved in our
currently on-going program assessing the possible association of fenfluramine or
dexfenfluramine and cardiac abnormalities would subject them to depositions, document
production or other discovery in either this or other lawsuits around the country, and
hence would interfere with their conduct of the study, and certainly, delay their work. 
Indeed, it is my opinion that many investigators and CRO’s would decline to continue in
the current studies, and would certainly decline to enroll patients in the future, if they
learned that their identities were going to be disclosed to litigants prior to acceptance of
a study report, or that they might be forced to engage in premature document productions
or depositions prior to the time they have completed their work.

      At the hearing on Relators’ motions for protective orders, Relators asserted primarily that
disclosure of the requested documents would be unduly burdensome because it would interfere
with on-going scientific studies and compromise the integrity of the results obtained from the
studies. See Tex. R. Civ. P. 166b(4). Plaintiffs responded that because Relators have not asserted
a specific privilege shielding the requested documents from disclosure, they must produce the
documents. See Tex. R. Evid. 501(3).
      The court granted Plaintiffs’ request that Relators be required to disclose the requested
documents. The court also granted Relators’ request for a protective order. The court’s order
provides among other things:
[Relators] shall produce to Plaintiffs by September 9, 1998, all documents in their
possession with regard to ongoing research pertaining to Fenfluramine, Phentermine
and/or Redux, which shall include but not be limited to all protocols, budgets, reports,
interim reports, communications or documents provided to or received from any
person(s) or organization(s) performing such research, or documents which reflect
communications to or from any such person(s) or organization(s);
 
[Relators] may redact such responsive documents only to the extent necessary to protect
physician-patient identifying information;
 
Plaintiffs herein are prohibited from contacting any of the individual researchers involved
in the ongoing studies being conducted on behalf of [Relators] nor can they notice the
depositions thereof without further order of this Court;
 
Plaintiffs and their attorneys herein are prohibited from disseminating the information the
subject of this Order with any person not a party or attorney in the above styled and
referenced causes. All parties who review documents subject to the terms of this Order
are hereby bound by the terms of this Order and subject themselves to the jurisdiction of
this Court.

APPLICABLE LAW
      Relators can obtain mandamus relief only upon showing that the court committed a clear abuse
of discretion and that they have no adequate legal remedy. Walker v. Packer, 827 S.W.2d 833,
839 (Tex. 1992) (orig. proceeding). To demonstrate a clear abuse of discretion, Relators must
show “that the trial court could reasonably have reached only one decision.” Id. at 840. Even
if we would have decided the matter differently, we “cannot disturb the trial court’s decision
unless it is shown to be arbitrary and unreasonable.” Id.
      When a party has sought protection from a particular discovery request, “the court may make
any order in the interest of justice necessary to protect the movant from undue burden.” Tex. R.
Civ. P. 166b(5).
Specifically, the court’s authority as to such orders extends to, although it is not
necessarily limited by, any of the following:
 
a. ordering that requested discovery not be sought in whole or in part, or that the
extent or subject matter of discovery be limited, or that it not be undertaken at the time
or place specified.
 
b. ordering that the discovery be undertaken only by such method or upon such
terms and conditions or at the time and place directed by the court.
 
c. ordering that for good cause shown results of discovery be sealed or otherwise
adequately protected, that its distribution be limited, or that its disclosure be restricted.

Id.
      The Supreme Court has recognized that the otherwise “broad scope of discovery may be
circumscribed . . . by the legitimate interest of the opposing party in avoiding discovery based on
a compelling, particularized interest in nondisclosure.” Eli Lilly & Co. v. Marshall, 850 S.W.2d
155, 160 (Tex. 1993) (orig. proceeding). The Court held in Eli Lilly that because of “compelling
public interest considerations manifested by” certain federal regulations related to the discovery
request being considered, the plaintiffs were not entitled to discovery of the information sought. 
Id.
APPLICATION
Compelling Public Interest
      Relators contend they have asserted such a compelling public interest in the present case. 
Specifically, they argue “the public has a compelling interest in the results of these studies and,
therefore, has an aligned interest [with Relators] in the non-disclosure of this information prior
to the studies’ completion.” They also assert that compliance with Respondent’s order “would
harm the public” “which ultimately stands to gain from knowledge of the final results.” (quoting
Dow Chemical Co. v. Allen, 672 F.2d 1262, 1269 (7th Cir. 1982)).
      We agree that the public indeed has a compelling interest in the integrity of the studies being
conducted in this case. However, Relators’ own conduct in the execution of the studies presents
conflicting evidence on the extent to which they have sought to preserve this compelling interest. 
In addition, Pittelli equivocates in his affidavit on whether disclosure of the researchers’ identities
will in fact jeopardize the integrity of the studies or result in termination of the studies before
completion.
      Pittelli states that Wyeth retained a number of CRO’s to conduct the studies. He asserts that
an entity which retains CRO’s in studies such as these should not have “any way to know any
preliminary results” from the studies and that “the principal investigator—typically a leading
academic physician”—will conduct the final “independent review of the study data” and present
“the most important findings in a detailed report.” However, Relators’ counsel has provided this
Court with copies of the protocols for the ongoing studies which state in pertinent part:
The investigator agrees that Wyeth-Ayerst Laboratories, its employees, or agents, as well
as representatives of the U.S. Food and Drug Administration, will have the right from
time to time during the course of this study to audit and review pertinent medical records
relating to this clinical trial.

This raises a question about whether the studies being conducted at Wyeth’s behest are truly being
conducted independently.
      According to Pittelli, the CRO’s “tabulate[ ] the results” and “make[ ] the appropriate
statistical analysis.” “[T]he scientific method demands detailed statistical analyses.” (emphasis
added). If Wyeth has some involvement in the studies beyond establishing the protocols and
providing funding, then it has acted inconsistently with the “compelling public interest” it seeks
to preserve.
      Relators’ counsel argued before the trial court that so far as he knew, the only interim
documents relating to the studies which Relators possess are “status report[s]” in which a CRO
“would report back: We now enrolled 100 patients. So we’ve now enrolled 150 patients. So
we’re at this stage of the process in the protocol. This is how far down the road we are.” In
addition, counsel informed the court that Relators “have made reports to the FDA with respect to
the administrative status of how the science is going and where the process is.”



      Other than possibly revealing the identities of the CRO’s, we fail to see how disclosure of
these so-called “status reports” under the terms of Respondent’s order will impact the interest
Relators seek to protect. Moreover, Relators have cited no authority prohibiting disclosure of the
reports made to the FDA.
The Protective Order
      Relators agree that Plaintiffs are ultimately entitled to discovery of the documents sought. 
However, they argue that disclosure of this information before completion of the studies poses an
undue burden because it threatens the “compelling public interest” identified above. Thus, they
seek protective orders delaying the timing of the disclosure. See Tex. R. Civ. P. 166b(5)(b)
(protective order may require that discovery be undertaken “at the time or place specified” by the
court).
      Respondent granted Relators much of the relief they sought. He directed that the names of
the patients and physicians participating in the studies be redacted. Id. 166b(5)(a). He prohibited
Plaintiffs from contacting the researchers involved in the studies without prior permission of the
court. Id. 166b(5)(c). He prohibited them from disseminating the information disclosed pursuant
to his order to any person not a party to the two lawsuits before him. Id.



      Relators place much reliance on Eli Lilly to demonstrate that Respondent should have delayed
disclosure of the information sought. In that case, the trial court ordered unrestricted disclosure
of the identities of physicians who had reported possible adverse reactions to Prozac experienced
by their patients. Eli Lilly, 850 S.W.2d at 157. In this case however, Respondent placed
protective restrictions on the disclosure of the information sought. Thus, this case is
distinguishable from Eli Lilly.
CONCLUSION
      Relators’ own conduct in the execution of the studies presents a question about whether they
have acted inconsistently with the compelling public interest they seek to preserve. In addition,
their evidence does not clearly establish that disclosure of the researchers’ identities will in fact
jeopardize the integrity of the studies or result in termination of the studies before completion. 
Finally, Respondent’s order places numerous restrictions on the disclosure of the information they
seek to withhold.
      For each of these reasons, we cannot say Relators have satisfied the onerous burden of
demonstrating that Respondent “could reasonably have reached only one decision.” Walker, 827
S.W.2d at 840. Thus, they have failed to establish a clear abuse of discretion. Accordingly, we
deny Relators’ petition for mandamus relief. Relators must comply with Respondent’s order
within ten days of the date this opinion issues.
 
                                                                               REX D. DAVIS
                                                                               Chief Justice

Before Chief Justice Davis
      Justice Cummings and
      Justice Vance
Petition denied
Opinion delivered and filed October 2, 1998
Publish